UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DENISE MARSHALL, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 1477 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| FAMILY DOLLAR STORES, INC. and FAMILY DOLLAR, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Denise Marshall brought this lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq*., against her former employer, Family Dollar, Inc., and its corporate parent, Family Dollar Stores, Inc. (together, "Family Dollar"). The suit alleges that Marshall was sexually harassed by a Family Dollar store manager and then fired in retaliation for lodging internal complaints and filing an administrative charge about the harassment. Family Dollar has moved for summary judgment. The motion is granted as to the sexual harassment claims, which Marshall has declined to pursue. Doc. 32 at 2 n.1. The motion is denied as to the retaliation claims.

**Background**

The facts are stated as favorably to Marshall as the record and Local Rule 56.1 allow. Family Dollar is a retail chain with locations across the United States. Doc. 34 at ¶ 4. Marshall worked at several Family Dollar stores from June 2007 until her termination. *Id*. at ¶ 5. In February 2009, Area Operations Manager Oren Jones transferred Marshall to the store at 5101 West Division Street in Chicago, Illinois. *Id*. at ¶ 11. Maurice Wakefield became the manager

of that store in April 2009. *Id*. at ¶ 13. In May and June of 2009, Marshall lodged several internal complaints about what she alleged to be Wakefield's unprofessional conduct; none of those complaints involved conduct of a sexual nature. *Id*. at ¶¶ 46, 48-49, 54-56.

On July 16, 2009, Marshall complained to Jones and to the Family Dollar corporate human resources office that Wakefield had intentionally touched her buttocks on July 15, 2009. *Id*. at ¶¶ 58, 64; Doc. 36 at ¶ 4. On August 17, 2009, Marshall filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR"), alleging that Wakefield had subjected her to unwanted "sexual conduct" and had retaliated against her for complaining about the conduct. Doc. 36 at ¶ 5; Doc. 32-7 at 2-4.

Less than three months later, on November 3, 2009, Wakefield drafted and signed a Performance Improvement Action Plan ("PIP") stating that Marshall had left her cashier work station and began talking on her cell phone, in violation of company policy. Doc. 34 at ¶ 27; Doc. 29-8 at 19. Wakefield drafted and signed a second PIP that day stating: "when questioned about unauthorized cell phone usage, associate Denise Marshall told store [manager] (Maurice Wakefield) to find someone else to play with, better yet, go play with yourself." Doc. 32-11 at 2 (capitalization normalized); *see also* Doc. 36 at ¶ 16. According to Family Dollar, Area Operations Manager Kevin Johnson, Jones's successor in that position, investigated the incident but was unable to determine whether Marshall had made the alleged insubordinate remark to Wakefield. Doc. 34 at ¶¶ 32, 35. Given this, Family Dollar's human resources department advised Johnson not to terminate Marshall unless she actually admitted to making the insubordinate remark. *Id*. at ¶ 35.

On November 10, 2009, Johnson, Wakefield, Marshall, and Performance Manager Jacqueline Gibson participated in a meeting regarding the November 3 incident. Prior to the

meeting, Johnson told Wakefield that Marshall would not be terminated unless she admitted to making the insubordinate remark. Doc. 34 at ¶ 36; Doc. 29-14 at 21-22. According to Johnson, Marshall admitted at the November 10 meeting that she used her cell phone while at work on November 3 and then told Wakefield to "go fuck yourself." Doc. 34 at ¶ 38; Doc. 29-14 at 25-26. By contrast, Marshall denies that she used her cell phone on the sales floor on November 3, denies having said "find someone else to play with, better yet, go play with yourself" or "go fuck yourself" during her employment at Family Dollar, and denies having admitted at the November 10 meeting that she said either of those things to Wakefield. Doc. 36 at ¶ 38; Doc. 32-2 at 21-22; Doc. 32-16 at ¶¶ 2-4.

Marshall was terminated during the November 10, 2009 meeting. Doc. 34 at ¶¶ 37, 39. Marshall later filed this lawsuit claiming, *inter alia*, that she was terminated because of her complaints about Wakefield's sexual harassment.

**Discussion**

Title VII prohibits an employer from discriminating against an employee who "opposed any practice" prohibited by Title VII or who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a). Title VII's "antiretaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms … by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)). The IHRA has a materially identical anti-retaliation provision. *See* 775 ILCS 5/6-101(A) ("It is a civil rights violation for a person … to … [r]etaliate against a person because he or she has opposed that

which he or she reasonably and in good faith believes to be … sexual harassment in employment … or because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under" the IHRA). Illinois courts apply the same standard to IHRA retaliation claims that federal courts apply to Title VII retaliation claims. *See Zaderaka v. Ill. Human Rights Comm'n*, 545 N.E.2d 684, 687 (Ill. 1989) ("In analyzing employment discrimination actions brought under the Human Rights Act, the [Illinois Human Rights] Commission and the Illinois appellate court have adopted the analytical framework set forth in United States Supreme Court decisions addressing claims brought under Title VII of the Civil Rights Act of 1964 … . This court will follow the same approach.") (citations omitted).

Marshall may avoid summary judgment through either the direct or indirect methods of proof. *See Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012). Marshall pursues only the direct method. Doc. 32 at 5-6. Under the direct method, a plaintiff "must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 687 (7th Cir. 2010) (internal quotation marks omitted); *see also Coleman*, 667 F.3d at 859; *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). The parties do not dispute that Marshall engaged in statutorily protected activities: complaining about sexual harassment internally and then filing an administrative charge with IDHR. It is also indisputable that Marshall suffered a materially adverse action: Family Dollar terminated her on November 10, 2009. *See Lapka v. Chertoff*, 517 F.3d 974, 985-86 (7th Cir. 2008) (termination is a materially adverse action sufficient to support a retaliation claim). The key question, then, is whether Marshall has presented sufficient evidence from which a trier of fact could find that there was a "causal connection" between her complaints of sexual harassment and her termination. *See Antonetti v.*

*Abbott Labs.*, 563 F.3d 587, 593 (7th Cir. 2009) ("To survive summary judgment, [the plaintiff] must present sufficient direct or circumstantial evidence for the trier of fact to infer that there was a 'causal link' between her complaints of sex discrimination and her termination.").

To establish the requisite causal connection, Marshall must show that her complaints of sexual harassment and/or her IDHR charge "were a substantial or motivating factor" in Family Dollar's decision to fire her. *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011) (internal quotation marks omitted). Causation may be shown by direct evidence, which "entail[s] something akin to an admission by the employer ('I'm firing you because you had the nerve to accuse me of sex discrimination!')." *Coleman*, 667 F.3d at 860 (some internal quotation marks omitted); *see also Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009). Causation also may be shown "by presenting a 'convincing mosaic' of circumstantial evidence that would permit the same inference [of retaliation] without the employer's admission." *Coleman*, 667 F.3d at 860 (some internal quotation marks omitted). Pertinent circumstantial evidence consists of (1) "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of [retaliatory] intent might be drawn," (2) "evidence showing that the employer systematically treated other, similarly situated … employees better," or (3) "evidence that … the employer's justification [for the adverse action] is pretextual." *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011) (internal quotation marks omitted); *see also Coleman*, 667 F.3d at 860. "Each type of evidence [direct and circumstantial] is sufficient by itself (depending of course on its strength in relation to whatever other evidence is in the case) to support a judgment for the plaintiff; or they can be used together." *Coleman*, 667 F.3d at 860 (internal quotation marks omitted). The appropriate focus

"is not whether the evidence offered is direct or circumstantial but rather whether the evidence points directly to a discriminatory reason for the employer's action." *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (internal quotation marks omitted); *see also Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 672 (7th Cir. 2011).

The evidence of record would permit a reasonable jury to conclude that Marshall was fired because she complained about sexual harassment and that Family Dollar's proffered reason for the termination—that she used insubordinate language with Wakefield on November 3, 2009—is false and pretextual. Family Dollar's Local Rule 56.1(a)(3) statement makes it abundantly clear that Marshall would not have been terminated if she did not admit at the November 10, 2009 meeting that she made the alleged insubordinate remark to Wakefield on November 3. Doc. 30 at ¶¶ 35, 36, 38, 39. Yet Marshall has averred that she never said "go play with yourself" or "go fuck yourself" to Wakefield and also that she did not admit at the November 10 meeting to having said either of those things. Doc. 36 at ¶ 38; Doc. 32-16 at ¶¶ 2-4; Doc. 32-2 at 20-22. Although Johnson recalls the November 10 meeting differently, the court must accept Marshall's rendition of the facts as true at this juncture. *See McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) ("The court may not … decide [on summary judgment] which testimony is more credible."); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("summary judgment cannot be used to resolve swearing contests between litigants"); *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 610 (7th Cir. 2001) ("the district court … must accept as true the nonmoving party's evidence and draw all reasonable and justifiable inferences in favor of that party"). And assuming that Marshall did not admit at the November 10 meeting to making either insubordinate remark, a reasonable jury could conclude that Family Dollar's proffered reason for Marshall's termination was not the real reason. *See Olsen v. Marshall &*

*Isley Corp.*, 267 F.3d 597, 601 (7th Cir. 2001) ("evidence that calls into question the veracity of the employer's explanation … creates a genuine issue of material fact as to whether the employee was fired for a [retaliatory] reason").

In so holding, the court acknowledges that "insubordination … is … a legitimate reason for an employer to fire an employee," and that the pertinent issue here "is not whether [the] employer's evaluation of the employee was correct[,] but whether it was honestly believed." *Culver v. Gorman & Co.*, 416 F.3d 540, 547 (7th Cir. 2005); *see also Pugh v. City of Attica, Ind.*, 259 F.3d 619, 626 (7th Cir. 2001); *Willis v. Marion Cnty. Auditor's Office*, 118 F.3d 542, 548 (7th Cir. 1997); *Billups v. Methodist Hosp. of Chi.*, 922 F.2d 1300, 1304 (7th Cir. 1991). Invoking this principle, Family Dollar argues that summary judgment is warranted because there is no evidence that Johnson—who, according to Family Dollar, made the ultimate decision to terminate Marshall—did not honestly believe that Marshall made the insubordinate remark to Wakefield on November 3. Doc. 29 at 16. However, "[s]ummary judgment is appropriate *only* if a reasonable fact finder would be compelled to believe [Family Dollar's] explanation, and [Marshall] can avoid summary judgment by pointing to specific facts that place the employer's explanation in doubt." *Culver*, 416 F.3d at 547 (citation omitted).

A reasonable jury would have ample reason, based on the evidence of record, to conclude that Johnson did not honestly believe that Marshall made the alleged insubordinate remark. Family Dollar admits that prior to the November 10 meeting, Johnson's findings regarding Wakefield's allegations were "inconclusive." Doc. 35 at 13; Doc. 34 at ¶ 35. Johnson's supposedly honest belief that Marshall engaged in insubordinate conduct is thus based on his submission that Marshall admitted at the November 10 meeting that she had said "go fuck yourself" to Wakefield on November 3. But as noted above, Marshall denied making that

admission at the November 10 meeting. Marshall's denial, standing alone, would permit a reasonable jury to question the honesty of Johnson's supposed beliefs regarding Marshall's conduct on November 3. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000) ("the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt") (internal quotation marks omitted).

Further support for this conclusion comes from the fact that Family Dollar has provided materially inconsistent accounts of what precisely Marshall admitted at the November 10 meeting. Johnson testified that Marshall admitted at the November 10 meeting to having told Wakefield to "go fuck himself." Doc. 29-14 at 25-26. By contrast, Family Dollar's interrogatory answers, which Johnson signed, state that Marshall admitted to telling Wakefield to "[g]o play with yourself." Doc. 32-12 at 7, 11. Gibson's testimony is consistent with the interrogatory answer and inconsistent with Johnson's testimony. Doc. 32-4 at 23. So, too, is the PIP that Wakefield completed regarding the alleged insubordination. Doc. 32-11 at 2 (stating that Marshall told him to "go play with yourself"). In an attempt to explain the inconsistency between his testimony and the PIP, Johnson averred at his deposition that he told Wakefield not to write on the PIP what Marshall actually said ("go fuck yourself") and to instead write "go play with yourself." Doc. 36 at ¶ 18; Doc. 29-14 at 3-4. Johnson also testified that Gibson was present when he told Wakefield to alter the language on the PIP. Doc. 36 at ¶ 18; Doc. 29-14 at 5. However, Gibson testified that Wakefield told her (Gibson) that Marshall had told him (Wakefield) to "go play with yourself." Doc. 36 at ¶ 19; Doc. 32-4 at 16; Doc. 35-5 at 8. Gibson also testified that Marshall admitted at the November 10 meeting to having told Wakefield to go "play with yourself." Doc. 32-4 at 23. In a declaration submitted after her

deposition, Gibson swore that Marshall *also* admitted at the November 10 meeting to saying "go fuck yourself" to Wakefield. Doc. 32-13 at ¶ 10.

A reasonable jury could conclude from all these inconsistencies and flip-flops that Johnson did not honestly believe that Marshall had made either of the insubordinate remarks, or that Marshall had admitted to making either remark. It follows that a jury could conclude that Family Dollar's explanation for Marshall's termination is pretextual and that the real reason was her complaints about Wakefield's alleged sexual harassment. *See Paz v. Wauconda Healthcare & Rehab. Centre, LLC*, 464 F.3d 659, 665 (7th Cir. 2006) ("Dishonesty alone could be a sufficient basis for a jury to conclude that a defendant is covering up a discriminatory motivation for an employee's discharge."); *Applebaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 579 (7th Cir. 2003) ("One can reasonably infer pretext from an employer's shifting or inconsistent explanations for the challenged employment decision.") (collecting cases); *Perdomo v. Browner*, 67 F.3d 140, 145 (7th Cir. 1995) ("Because a fact-finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness into question precludes a summary judgment.").

There is yet another ground on which a reasonable jury could reject Family Dollar's explanation for Marshall's termination—although Family Dollar claims that Johnson terminated Marshall because he concluded, based on her admissions *at* the November 10 meeting, that she was insubordinate to Wakefield, the record suggests that Johnson decided *before* the meeting to terminate Marshall. Gibson testified that Johnson asked her to attend the November 10 meeting because Marshall was going to be discharged. Doc. 36 at ¶ 24. In its interrogatory answers, Family Dollar referred to the November 10 meeting as an "exit interview." *Id*. at ¶ 28; Doc. 32-12 at 6-7. And according to Marshall, the November 10 meeting began with Wakefield reading

the PIP and telling her she was terminated. Doc. 36 at ¶ 35; Doc. 32-2 at 19-20. A jury could conclude from this evidence that Family Dollar decided before the November 10 meeting to terminate Marshall, and therefore that Johnson's explanation for the termination is false.

Family Dollar is wrong to assert that *Pugh* and *Billups* warrant judgment in its favor. Both cases involved an employer's decision to terminate an employee based on the employer's conclusion that the employee had engaged in wrongful conduct. In both cases, the Seventh Circuit held that the employees' denials of the wrongful conduct, standing alone, did not cast doubt on the honesty of the employers' beliefs that the employees had committed the wrongful acts. *Pugh*, 259 F.3d at 627; *Billups*, 922 F.2d at 1304. As shown above, Marshall, unlike the plaintiffs in *Pugh* and *Billups*, has done far more than "simply assert that the acts for which she was terminated did not occur." *Billups*, 922 F.2d at 1304. Rather, Marshall has presented ample independent evidence "that casts doubt on the veracity of [Family Dollar's] belief that" she made either of the insubordinate remarks, *Pugh*, 259 F.3d at 629, making summary judgment inappropriate.

## Conclusion

For the foregoing reasons, Family Dollar's motion for summary judgment is granted as to Marshall's sexual harassment claims and denied as to her retaliation claims. This case will proceed to trial on the retaliation claims.

April 3, 2012

_____
United States District Judge